IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 08-216 |
| | ) | See Civil Action No. 12-1265 |
| ANTHONY HOPSON, | ) | |
| | ) | |
| Defendant/petitioner. | ) | |

**MEMORANDUM OPINION**

BLOCH, District J.

Petitioner, on August 31, 2012, filed a pro se Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in
Federal Custody and memorandum in support thereof (Doc. Nos. 122,
123). Upon consideration of this motion, and upon further
consideration of the Government's response to Petitioner's motion
(Doc. No. 129), filed on November 29, 2012, and Petitioner's reply to
the Government's response (Doc. No. 131), filed on December 20, 2012,
the Court denies Petitioner's motion for the reasons set forth below.

**I.    Background**

On June 5, 2008, a grand jury sitting in the Western District of
Pennsylvania returned a five-count indictment against Petitioner.
Counts One through Four each charged Petitioner with distributing less
than 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and
841(b)(1)(C), and Count Five charged him with possessing with the
intent to distribute less than 100 grams of heroin, in violation of 21
U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  The facts that form the basis
for Counts One and Two of the indictment involve Petitioner's sale of
heroin to a confidential informant ("CI") on September 15, 2007, and

September 19, 2007, respectively, and the facts underlying Counts Three and Four involve Petitioner's sale of heroin to an undercover police officer on March 10, 2008 and March 17, 2008, respectively. Count Five relates to the less than 100 grams of heroin that was discovered at Petitioner's residence pursuant to the execution of a search warrant on March 17, 2008.

In connection with these charges, Petitioner, on October 23, 2008, filed pretrial motions, including a Motion to Suppress Statements and a Motion to Suppress Evidence (Doc. Nos. 32, 36). In these motions, Petitioner alleged that (i) certain statements he made to officers upon arrest were obtained in violation of his constitutional rights and (ii) the heroin found at his residence was illegally seized because the warrant which authorized the search of his home lacked probable cause and was prematurely executed. See (id.).

On April 22, 2009, a pretrial conference was held on Petitioner's pretrial motions at which time the Court granted counsel's motion to withdraw the motion to suppress statements and heard evidence regarding the motion to suppress evidence. The Court determined, after hearing evidence and argument, that the warrant was supported by probable cause and that it had not been prematurely executed. (Doc. No. 61). Accordingly, the Court denied Petitioner's motion to suppress evidence and scheduled trial for April 27, 2009.

Petitioner proceeded to trial, and, on April 29, 2009, the jury found Petitioner guilty at all five counts. On January 7, 2010, the Court sentenced Petitioner to a term of imprisonment of 105 months at

2

each of Counts One through Five, to be served concurrently, followed by three years' supervised release.

Petitioner subsequently appealed to the United States Court of Appeals for the Third Circuit ("Third Circuit") and challenged his conviction and sentence. Petitioner argued, among other things, that his counsel should have objected to the portions of Task Force Officer Carr's testimony at trial relating to statements made by the CI because the admission of the CI's statements violated his rights under the Confrontation Clause and the Supreme Court's holding in Crawford v. Washington, 541 U.S. 36 (2004). See (Doc. No. 119).

On February 11, 2011, the Third Circuit affirmed Petitioner's conviction and sentence, finding that the government's evidence was "more than sufficient to support the verdict" and that no Crawford violation occurred because no testimonial hearsay was introduced against him at trial. United States v. Hopson, 412 Fed. Appx. 532, 534-35 (3d Cir. 2011). In so finding, the Third Circuit explained that "no out of court statement by [the CI] was ever presented at trial" because the CI "did not appear at trial and his audio recordings were not played." Id. at 535. The Court found that Petitioner's rights under the Confrontation Clause had not been violated since he "had every opportunity to cross examine the law enforcement officers who testified at trial about what they saw outside of Hopson's home, as well as their encounters with Brimage." Id. at 535. Petitioner sought a writ of certiorari before the United States Supreme Court and his petition was denied on October 17, 2011. See (Doc. No. 122 at 2).

3

On August 31, 2012, Petitioner filed his motion pursuant to 28 U.S.C. § 2255. On September 4, 2012, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist. See (Doc. No. 124). With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. The Court advised that if Petitioner did not file a written notification of withdrawal by October 4, 2012, the Court would rule upon his motion as originally filed. Petitioner implicitly indicated that he wished to have his motion ruled upon as filed since he did not ask this Court to withdraw his motion. See (Doc. No. 124 at 2).

## II.   **Discussion**

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief." Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

4

As noted, Petitioner brings his pro se motion pursuant to Section 2255. This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States...[to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Petitioner claims he is entitled to relief under Section 2255 on the basis of ineffective assistance of counsel. A defendant seeking relief under Section 2255 on the ground of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result - that is, there is a reasonable probability that, but for the counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 669.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

5

> assistance; that is, the defendant must overcome
> the presumption that, under the circumstances,
> the challenged action might be considered sound
> trial strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90)

(internal quotation marks and citations omitted). "It is only the

rare claim of ineffective assistance of counsel that should succeed

under the properly deferential standard to be applied in scrutinizing

counsel's performance." United States v. Kauffman, 109 F.3d 186, 190

(3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d

Cir. 1989)).

In evaluating claims of ineffective assistance, the Third Circuit

has endorsed the practical suggestion in Strickland "to consider the

prejudice prong before examining the performance of counsel prong. . .

." United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005). In

determining whether the Strickland prejudice prong has been satisfied,

courts are instructed to "consider the strength of the [Government's]

evidence" because a "court simply cannot make [the determination of

whether the results of the proceeding would have been different]

without considering the strength of the evidence against the accused."

Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (internal citations

omitted).

In this context, Counsel can never be ineffective for failing to

raise a meritless or frivolous claim or issue. See, e.g., United

States v. Sanders, 165 F.3d 248, 253-54 (3d Cir. 1999) ("There can be

no Sixth Amendment deprivation of effective counsel based on an

attorney's failure to raise a meritless argument.") (citations

omitted)). It should also be noted that vague and conclusory

6

allegations may be disposed of without a hearing. United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000).

Although Petitioner generally is careful to portray his claims as claims of ineffective assistance of counsel, some of his arguments seem to be attempts at convincing the Court to overturn certain legal rulings, made both by this Court and by the Third Circuit. The Court emphasizes that absent exceptional circumstances, such as an intervening change in the governing substantive law, absent here, Section 2255 generally "may not be employed to relitigate questions which were raised and considered on direct appeal." United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (citations omitted); see also United States v. Pelullo, 305 Fed. Appx. 823, 827 (3d Cir. 2009); Davis v. United States, 417 U.S. 333 (1974) (intervening change in governing substantive law that makes petitioner's conviction and punishment unlawful constitutes exceptional circumstances that justify collateral relief under § 2255 after unsuccessful litigation of the issue on direct appeal). Accordingly, while the Court will address Petitioner's claims of ineffective assistance, it will not reconsider its own holdings or the holdings of the Third Circuit.

### Grounds for Relief

Petitioner's motion and brief identify six grounds on which he seeks relief. Five of his claims concern alleged instances of ineffective assistance on the part of his trial counsel, and, one claim involves an allegation of prosecutorial misconduct based on the alleged introduction of illegally obtained evidence at the grand jury proceedings. Read even in the most favorable light, Petitioner's

7

allegations are woefully lacking in merit and are disingenuous at best. Indeed, the issues Petitioner raises are based on either: (i) a mischaracterization of facts, (ii) counsel's failure to argue meritless claims, or (iii) arguments that already have been raised and rejected either at the trial level or on direct appeal. In light of the nature and the strength of the evidence that was presented against him at trial, the Court finds that Petitioner's conclusory allegations fall well short of demonstrating that he was prejudiced by any of counsel's purported errors.[1]

## Grounds One and Two

Petitioner's first two contentions essentially criticize his counsel's failure to raise meritless arguments. Ground One, for example, mounts an attack on counsel's failure to request a Franks hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to challenge the affidavit of probable cause for the search warrant of Petitioner's home. Petitioner argues that the affiant, Task Force Officer Carr, included a false statement concerning the location of an alleged drug transaction between Petitioner and the CI in regards to the first September 2007 controlled buy.

Petitioner's contention is that, in the affidavit, "Officer Carr indicated that [in the] late summer of 2007, surveillance team observed the confidential informant accept drugs from the Petitioner in the Petitioner driveway." Petitioner's Memorandum in Support of Motion to Vacate (Doc. No. 123 at 2). Petitioner contends that the

---

[1]     Since the record itself conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is necessary.

statement about the drug deal taking place in his driveway is false
and argues that his counsel was ineffective for failing to investigate
the lie by requesting a Franks hearing. In support of his argument
that there was no observed drug transaction in his driveway,
Petitioner relies on the trial testimony of the officers from the
surveillance team who testified that they "did not relay such a report
to Officer Carr . . . ." Id.

A Franks hearing is required where "a defendant makes a
substantial preliminary showing that a false statement knowingly and
intentionally, or with reckless disregard for the truth, was included
by the affiant in the warrant, and if the allegedly false statement is
necessary to the finding of probable cause . . . ." Franks v.
Delaware, 438 U.S. 154, 155-56. If a defendant makes the requisite
substantial showing for a hearing and is able to establish by a
preponderance of the evidence at that hearing "that the material
statements are either recklessly or intentionally untruthful, the
fruits of the search must be excluded unless the remaining content of
the warrant is sufficient to establish probable cause." United States
v. Brown, 3 F.3d 673, 676 (3d Cir. 1993) (citing Franks, 438 U.S. at
155-56).

In arguing that a materially false statement was intentionally
included in the affidavit of probable, Petitioner, of course, does not
actually quote the allegedly offensive portion of the affidavit
itself, but instead provides his own distorted summary of the
statement, with a signal at the end to "See Affidavit page 3 of 5, as
Exhibit #1, verifying the same." Id. Contrary to Petitioner's

9

conclusory assertion, a review of the affidavit does not reveal any statement about the surveillance team observing a drug transaction between him and the CI take place outside in his driveway. The relevant portion of the affidavit reads as follows:

> In late Summer of 2007, a controlled purchase was made in the following manner: CI#1 make contact with the target, Anthony Hopson who was living at 120 Champa Street in Penn Hills. Prior to the controlled buy, the CI was searched and found to have no contraband or money. CI#1 was under constant surveillance prior to, during, and after the controlled purchase. At no time did CI#1 met [sic] with anyone prior to meetings with the target, Anthony Hopson. **Surveillance observed Anthony Hopson meet CI#1 in the driveway at 120 Champa. CI#1 was given or fronted heroin from Hopson.** CI#1 then met with an undercover officer at a secondary location and gave him/her the stamp bags of heroin. This undercover officer provided CI#1 with pre-recorded buy money. (DANET funds). CI#1 then returned to 120 Chapa Street. After the controlled purchase, CI#1 met with your affiant. CI#1 stated that he/she was given or fronted heroin from Hopson. CI#1 stated that he/she returned to the house and gave the recorded buy money to Hopson for payment of the fronted heroin.

Affidavit of PC (Doc. No. 123-1 at 6) (emphasis added).

A plain reading of the allegedly offensive portions of the affidavit demonstrates the frivolousness of Petitioner's argument, as the relevant paragraph does not state that officers observed the CI accept the heroin from Petitioner in his driveway. Petitioner's entire argument rests upon a mischaracterization of facts, and he attempts to combine what clearly is intended to be two separate sentences. The Court finds no merit to his argument that these statements were intended to imply that "the surveillance team personally observed a drug transaction in the driveway or in the residence on that September 19[th] day of 2007." Petitioner's reply brief (Doc. No. 131 at 2).

10

It being unequivocally clear that no false statement to that effect was included in the affidavit, it goes without saying that Petitioner would have failed to make the "substantial preliminary showing that a false statement knowingly and intentionally, . . . included by the affiant in the warrant" in order to secure a hearing, even if his Counsel did request one. Franks, 438 U.S. at 155-56. Furthermore, as the Government argues, even if one were to remove the offending paragraph about the first controlled buy from the affidavit, the remainder of the affidavit is rife with probable cause to believe that Petitioner was selling heroin from his residence. See Affidavit of Probable Cause (Doc. No. 123-1). Thus, the Court finds that Petitioner's first claim is without merit as he has failed to articulate the prejudice suffered as a result of his counsel's failure to challenge a false statement in the affidavit that did not exist.

Petitioner's second ground for relief likewise lacks merit based on his failure to demonstrate prejudice. Petitioner contends that his counsel was ineffective for withdrawing certain motions at the pretrial hearing that previously had been filed by his first counsel at the beginning of the case.[2] In his brief, Petitioner contends that these withdrawn motions were critical to his defense, but does not explain how. He argues that counsel did not consult with him prior to withdrawing these motions, but, as

---

[2] Petitioner formerly was represented by assistant Federal Public Defender Jay Finkelstein, Esq.

the Government points out, Petitioner did not voice an objection to counsel's actions at the hearing. See (Doc. No. 123-4 at 2).

The motions at issue concern a motion to suppress Petitioner's statements and a motion to disclose the identity of the confidential informant. Petitioner has neither explained what benefit he stood to gain if these motions had been granted nor does he describe the manner in which they would have assisted him in challenging the evidence against him. Understanding the prejudice Petitioner suffered as a result of counsel's purported error in withdrawing these motions is crucial considering the strength of the Government's case against him, which, after all, did consist of four controlled purchases with either a confidential informant or undercover police officer, and, the results of a search warranted executed on his home.

As the Government points out, Petitioner's claim that the disclosure of the informant's identity was critical to his case is disingenuous in light of the record which indicates that Petitioner had known the identity of the informant since at least March 2008, when he made bond on his state charges. Indeed, at Petitioner's sentencing hearing on January 17, 2010, he told the Court:

> Second of all, I did not -- the informant - I knew the informant. **I was out** -- Mr. Carr (the government's case agent) arrested me twice. **I knew the informant**, I know where he lives, I know his girlfriend, I know the whole family, I had never had a history of hurting anybody or anything like that.

Sentencing Transcript (Doc. No. 106 at 6).

12

The pretrial hearing on Petitioner's motions in this case was April 22, 2009. At that point, it had been over a year since Petitioner had been out on bond and according to him, he not only knew the identity of the informant, but where the informant lived and who he was dating. Notwithstanding Petitioner's obvious knowledge of the informant's identity, he claims that official Government disclosure of the informant's identity was necessary to establish "absolute knowledge" of the identity and to challenge the evidence "derived therefrom" because it "could have been revealed that there was no sale recorded as contended by the Government." Petitioner's reply brief (Doc. No. 131 at 3). Petitioner does not explain how the CI could have provided any information favorable to his defense if his identity formally had been disclosed. Petitioner appears to be arguing that disclosure of the informant's identity somehow would have proved the Government's recorded controlled purchases to be a sham.

Petitioner's claim, again, is nothing more than a conclusory allegation based on the extremely unlikely scenario that the informant somehow would have provided exculpatory information, at least with regard to the controlled purchases the informant made. Petitioner, however, fails to explain how disclosure of the informant's identity would have absolved him from guilt in connection with the controlled purchase with the undercover police officer which was the basis for Counts Three and Four of the indictment. The Court thus fails to see how counsel could have been ineffective for failing to seek out and

obtain information that was already known to his client, and
likewise fails to see the prejudice Petitioner suffered as a
result. See Sanders, 165 F.3d at 253-54.

With respect to the withdrawn motion to suppress
statements, Petitioner claims that counsel was ineffective for
withdrawing it without consulting him, but again fails to offer
anything beyond a bare-boned allegation regarding the prejudice
he suffered as a result of counsel's actions. The entirety of
Petitioner's argument with respect to this motion is the
following:

> The second motion filed with the court, that was withdraw
> [sic] by counsel was a motion requesting the prosecutor to
> substantiate the origin of the statement allegation made by
> the Petitioner. These statements were introduced at trial
> through Officer Carr testimony, there by withdrawing this
> motion, counsel demonstrated dire ineffectiveness.

Petitioner's Memorandum in Support of Motion (Doc. No. 123 at 3).
The statements sought to be suppressed in the motion concern
Petitioner's question to Officer Carr after his arrest about who
"did him" (i.e. set him up), and his statement that the officers
would not find drugs at the house, but they would find drug
paraphernalia in a gym bag which was located in his basement. See
(Doc. No. 44). The Government had indicated in its response to
the motion to suppress that Petitioner had initiated the
conversation with the officers and that his statements were
voluntarily made. (Doc. No. 44 at 7) ("[I]t was Hopson who
initiated matters when he asked the police to provide him with
the identity of the person who set him up."). Counsel withdrew
the motion to suppress statements at the April 22, 2009, pretrial

14

hearing and Petitioner did not voice any objection to this course of action. See (Doc. No. 105 at 2).

Again, Petitioner fails to establish prejudice in arguing that his Counsel was ineffective for withdrawing the motion to suppress because he cannot establish that the result of the proceedings would have been different, but for his counsel's purported errors. Indeed, to make a successful showing of prejudice, Petitioner would have to show that the motion would have been granted and that the jury would have acquitted him based on the absence of his post-arrest statements. Unfortunately for Petitioner, he cannot make this showing because the evidence underlying Counts One through Four of the indictment was obtained long before Petitioner made any statements.

Nor can Petitioner make the requisite showing of prejudice as to Count Five because the search of his home revealed twenty stamp bags of heroin and a glass dish containing a white powdery residue in the basement that were not located in the gym bag he referred to in his statements. Thus, Petitioner cannot demonstrate prejudice since all of the evidence against him was obtained either prior to, or independent of, his post-arrest statements, which shows that his statements were not critical or necessary to the probable cause that formed the basis for his charges. Indeed, given the nature of the evidence against him, the Court finds that no reasonable probability exists that the jury would have acquitted Petitioner based on the absence of his statements at trial.

## Ground Three

Petitioner's third ground for relief involves a claim that already has been raised and rejected by the Third Circuit on direct appeal. Petitioner argues that his counsel was ineffective in failing to object to portions of Officer Carr's testimony concerning statements made by the CI on the basis that it violated his rights under the Confrontation Clause. The Third Circuit already considered this argument and found that his rights under the Confrontation Clause had not been violated since no testimonial hearsay had been admitted against him at trial. See Hopson, 412 Fed. Appx. at 535. Thus, the Court will not revisit the issue here as the matter already has been raised and rejected on direct appeal. See DeRewal, 10 F.3d at 105 n.4.

## Fourth Ground

Petitioner's fourth contention is that his counsel was ineffective in failing to introduce at trial his recorded conversation with the CI on September 19, 2007, and his recorded conversation with the undercover officer on March 10, 2008. See (Doc. No. 123 at 4). Petitioner claims that these recordings did not contain any incriminating information and his counsel was ineffective for failing to play them at trial because they would have established his innocence in the transactions.

Petitioner, again, advances nothing more than unsupported and conclusory allegations that fail to provide any insight as to the kind of exculpatory information he believed these recordings would disclose. The Court has reviewed the transcript of the September 19,

16

2007, conversation and it hardly can be characterized as exculpatory. The conversation directly implicates Petitioner in the drug trade, and at one point, even records him discussing the risk and rewards of selling drugs. See (Doc. No. 129-2 at 2) ("It's worth the money though. Make like five or six thousand on an ounce of dope, more than you do on an ounce of crack"; "All this get you in trouble baby. It gets me in more trouble cause I already got a point up under me.").

In any event, Petitioner's claim boils down to his counsel's failure to introduce his own prior statements that were recorded in the conversations with the CI and officer. It is well-established that under the Federal Rules of Evidence, a party may not introduce his own prior statements as substantive evidence to establish the truth of the matter asserted. See Fed. R. Evid. 801(d)(2)(a). Petitioner's argument therefore must fail because his counsel cannot be faulted for failing to introduce evidence that would not have been admissible to begin with, even if he had attempted to seek their introduction. Even if counsel were somehow ineffective in this regard, which he was not, Petitioner has not met his burden of establishing prejudice, since he has failed to show that these recordings contained information that was anything other than incriminating.

## Fifth Ground

Petitioner's fifth claim is grounded in his counsel's alleged failure to let him testify at trial. The entirety of Petitioner's argument on this issue is as follows:

It is the complaint, that counsel and the Petitioner had a general understanding that defense counsel was going

17

> to put the Petitioner on the stand to testify in his own
> defense at trial. Petitioner repeatedly asked Mr. Kaczynski
> when he was putting Petitioner on the stand to testify Mr.
> Kaczynski delay [sic] therefore the Petitioner was never
> put on the stand in his own behalf.

Petitioner's brief (Doc. No. 123 at 4). This claim can be
addressed in short order, as the affidavit of Petitioner's
counsel, William C. Kaczynski, puts to rest any concern that
counsel may have provided ineffective assistance by precluding
him from exercising his right to testify at trial.[3]

In his sworn affidavit, Mr. Kaczynski states that he did not
prevent Petitioner from testifying at his own trial. He explains that
**"Mr. Hopson did not even ask to testify at the trial.** The issue was
largely moot from the earliest days of trial preparation because of
Mr. Hopson's insistence that [he] was not going to testify at trial."
(Doc. No. 132 at 1) (emphasis added). He also states that he advised
Petitioner during their meetings at the Allegheny County Jail about
the risks of testifying at trial in terms of having his prior felony
convictions introduced against him and that he "was in full agreement
with [Petitioner's] decision not to testify." Id. at 2.

Counsel states that he largely was in agreement with
Petitioner's decision not to testify because of his "complete lack of
any explanation for his presence at either the Sunrise restaurant or
the Wendy's restaurant, when undercover officers purchased heroin
directly from [him] while the transaction was being observed by other

---

[3] The Court notes that Petitioner filed a response to counsel's
affidavit stating that counsel essentially lied in his
affidavit, that he did in fact want to testify at trial, and
that counsel was ineffective for failing to let him do so. See
(Doc. No. 133).

members of the task force." Id. at 2. Mr. Kaczynski stated that
Petitioner "refused to provide any explanation for his presence at, or
his involvement in, any of the controlled sales and he never explained
his actions" to his counsel. Id. at 1. He simply "maintained his
innocence without explanation and expected counsel to come up with a
defense on counsel's own." Id. Mr. Kaczynski's affidavit also explains
that:

> the issue of Mr. Hopson testifying never came up during
> trial because Mr. Hopson informed me before trial and then during
> trial that he was not going to testify. For that reason, the
> opening statement was tailored to avoid any mention of Mr. Hopson
> testifying and to accentuate that an accused has no need to
> produce any evidence and that the burden of evidence rests upon
> the Government.

Id. at 2. He then explained that:

> Immediately after the Government rested, consistent
> with my usual practice I took a moment to ask Mr. Hopson if
> there was anything else he wished me to present to the
> Court or if I had forgotten to do anything on his behalf
> during the trial, and he answered "No." I then rested on
> behalf of the defense (Trial Transcript, p. 203, lines 20-
> 25). Had Mr. Hopson elected to testify at trial, I would
> have had no idea what his testimony would have been because
> throughout the period of my representation he declined to
> either disclose his actions or explain his involvement to
> me regarding the controlled sales to the informant and the
> undercover officers.

(Doc. No. 132 at 2).

In light of counsel's affidavit and Petitioner's scant argument
on this matter, the Court finds absolutely no merit to his claim that
his counsel prevented him from testifying at trial. As the Government
points out, Petitioner also has failed to establish prejudice since he
"has made no attempt to explain how his testimony could have changed
the outcome of trial." (Doc. No. 129 at 32). The Court agrees that

Petitioner has failed to establish prejudice and likewise finds it difficult to imagine what the nature of Petitioner's testimony would have been had he taken the stand at trial. Petitioner has provided no insight as to how he would have explained away his involvement in four controlled purchases and his possession of twenty stamp bags of heroin found at his house.

### Sixth Ground

Petitioner's Sixth Ground for relief is also meritless as it seeks to relitigate the issue of whether there was sufficient probable cause to support the search warrant for his residence. Petitioner claims that the Government engaged in prosecutorial misconduct because it presented illegally obtained evidence to the grand jury in attempting to secure an indictment. See (Doc. No. 123 at 4-5). The issue of whether the warrant lacked probable cause was raised and argued at the April 22, 2009 pretrial hearing and the Court ruled that the warrant was supported by probable cause and that the search had been properly conducted. See (Doc. No. 105 at 28). Thus, this Court already has determined that the warrant was valid and that the evidence seized as a result was lawfully obtained. The Government, therefore, did not engage in any misconduct by presenting lawfully obtained evidence to the Grand Jury and the Court finds that no further discussion is warranted on this meritless argument.

### III. Conclusion

For all of the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of

appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right, and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

Date: April 23, 2013                    s/Alan N. Bloch
                                        United States District Judge

ecf: Counsel of record

cc:  Anthony Hopson, #09883-068
     FCI Fort Dix
     P.O. Box 200 (Camp)
     Fort Dix, NJ  08640